Good morning. Both of you each have 15 minutes. And is it, do I pronounce your name, is it Feigenbaum? Feigenbaum. Okay. Mr. Feigenbaum, please let me know. I know that you wanted to sit at council table. We do record these, and so I have to have you speak into the microphone, otherwise it won't record. Just so that I know, I mean, are all the, is everything acceptable to you in terms of presenting your case? Yes. Okay. And you are appearing pro se, you're representing Sharemaster, correct? Correct. All right. If you would start and please state your name for the record, and then having 15 minutes each side, if you could let me know if you want to reserve any time for rebuttal. Okay. I'd like to reserve five minutes. Okay. And please state your name for the record. Okay. My name is Howard Feigenbaum. I'm the owner, sole proprietor, and sole employee of a firm called Sharemaster. I've been a member of FINRA, a self-regulatory organization, for 27 years, and also registered with the Securities and Exchange Commission for that length of time. My firm only deals with mutual funds and variable insurance products by application only. I hold no customer funds or securities. Seven years ago, I filed an annual report or statement, and I relied on a section of the Securities and Exchange Act of 1934, Section 17, which grants my firm and firms like mine an exemption from filing an audited report. I still have to file a report, but it need not be audited. FINRA refused to accept the report because, at the time, the SEC interpreted that exemption as requiring an – well,  Let me ask you a question. Forgive me for interrupting. One of the arguments you made below was that you were seeking return of the $1,000 that was, in effect, a fine. Do I have that right? Right. Initially – And I didn't see that in your papers here, but you're not waiving that, are you? No. Okay, because, you know, frankly, they are arguing waiver against you on that. And the issue here is when, you know, we're interpreting things to determine what's a final disciplinary sanction and what is live at this time in terms of – and that if that might be your best argument, that that penalty or that fine, the late penalty, a fine, would be your best argument for having a live controversy. Well, I'm disputing the – But we generally – if people don't bring stuff up in their opening brief, then the first argument that we get from the other side is that you waived it. So I think that's what we're asking you. Have you waived that? No, I haven't. All right. Well, just a minute. You don't just say you didn't waive it. Where did you put it in your brief? Well, I – You can't just come in and say I didn't waive it. I got to read about it. I got to be able to read about it. I got to be able to look at what you said about it. I got to be able to examine the other side's arguments back about it. I didn't see any of that. Okay. Well, for me, the $1,000 isn't the main issue why I'm here. Okay. Because my worry is, frankly, that that $1,000 has never been raised in the brief, and therefore it is out. Okay. That's fine. The $1,000 is out. Well, you did raise it below the argument about the $1,000 in the lower court, yes? Yes, I did. But I'm here – So it's hard to see how your adversary is prejudiced if you are maintaining now that you didn't mean to waive it and want to continue it here now. Well, I guess I appreciate the good judge's question, but just tell me where in your brief you mentioned it. I got a lot of precedent about that. If you put it in the brief, I'll consider it. Well, I put it in my initial brief. To who? To the SEC. You ever put it in a brief here? I didn't put it in on remand, I don't believe. But the reason I'm here is because in this remand, the SEC has interpreted the law during the course of the litigation. I relied on Sections 19D and E of the Securities Exchange Act, which requires them to provide oversight. And what they did, instead of obeying the two things that the law requires, one of which is that FINRA notify them of final disciplinary sanctions, and number two, that I file a request within 30 days for a hearing, which I did. Those are the only two things that are required to have them review my case. But they didn't do that. Instead, during the course of the litigation, they interpreted the law and applied it retroactively. So I have no right, after they've made this, I can't win, because they've already changed the law after I relied on the law as it was. I understand your argument. I want to ask you a couple of questions. Where in the statutes do I find any indication of what Congress thought was a live controversy as it relates to the SEC and as to this matter? You don't find it. And the reason I say no. Oh, if you don't find it, then the next thing I do is I look at this case called Chevron. I understand. It's all about Chevron. Yes. Chevron says that if you don't find it, and so therefore somebody has to determine whether it is really something in front of the SEC or not, as long as the administrative agency gives a reasoned interpretation of the law as it relates to that, we're bound. I understand they have the right to interpret. But the right to interpret is limited by the clarity of the language and, in this case, the requirement for oversight. And using this interpretation, they've been able to abandon the requirement for oversight. In fact, their interpretation is So you're saying if I interpret your language correctly, you're saying that the language in the statute, 19D, that says they have an oversight into these matters, is clear enough whether they have an oversight over this matter and, therefore, we don't give them any difference? That's what I'm saying. And the Ninth Circuit noted that in a footnote in Defenders of Wildlife. It was footnote 11. You don't know the difference in that case. So if the Commission's view is that it cannot act upon this fine, your position is it's unreasonable. But it seems that Section 19E1 makes clear that the Commission must set aside such a fine if the Commission finds that the fine was inappropriately levied by FINRA. But the problem is we don't have that before us because you didn't raise it in your brief. Okay. Well, that's as to the fine, correct? Well, I'm That's what might make it a live controversy here. Well, there's another issue that makes it a live controversy if that standard is to be applied. My argument here is that that's ex post facto, if I remember my high school government. But the other issue is that FINRA wrongfully extended the period of my suspension. The FINRA hearing panel order clearly stated that the suspension was to be lifted when I complied with the requirement of filing an audited report. That happened on October 6th of 2009. But they didn't lift the suspension until January 24th of 2010. There was a continuing injury, and FINRA, who I tried to contact to resolve it, and they didn't want to respond, that's still open. If they come and audit me tomorrow and they say, did you do business between October 6th and January 24th, and they look at my records, they have, according to FINRA, they have the ability to fine me. But they've now corrected it? They haven't corrected it. If they could have NUNCPRO TUNC put it back and not have the suspension, but you're saying you still have the suspension on your record? I do. Are you still suspended? Pardon me? Are you still suspended? No. I complied, and they did lift it as of January 24th, but they were supposed to have lifted it as of October 6th in the preceding year. And I included that in my brief. Let me ask you another question about that. They came out with their suspension, and it wasn't a complete suspension. It was only temporary until you either sought a stay of the suspension or you filed. You didn't seek the stay, which you could have done. The next thing you do is you file an application for review on October 29, and the next thing you do is you comply on November 1st. So from October 6th to November 1st, it was suspended as a result of your actions, wasn't it? Right. Because you didn't do anything. And finally they lift the suspension, but on November 1st you comply. Finally you file a report as requested, and then it takes them another month and a half to lift the suspension. And it's that month and a half you're after? Well, it was more than a month and a half. It was almost two. It took from October 6th to November 1st to do something about it? That was the time in which an auditor was required to prepare the audit. All right. Let me ask you another question. Let me just address the suspension. What remedy are you seeking for that month and a half delay? Well, I'm not seeking for that month and a half. I'm just saying it's something that they should have reviewed. It should be subject to oversight. If you are not seeking any remedy, what's there to review? I'm not asking them to order FINRA to lift the suspension as of the date that I complied. But the issue is. Why would that be of any practical significance? Because in my case they publish it. They publish notice to the rest of the FINRA members that I am in violation and other firms may not do business with me. That's all past history. My question is now that you're no longer under suspension, your claim is that they should have lifted it a month and a half earlier. Right, but that's not the reason why I'm here today. The reason I'm here today is under Section 702 of the Administrative Procedure Act. I have the right to ultimately judicial review. I can't get to judicial review because they won't hear, they won't review my case with FINRA as they're required to do. Do you understand, sir, that people can file lawsuits, but if they thereafter settle the lawsuits, they can't go forward with their cases? Well, I understand that applies. Do you understand that principle? I do. Isn't that exactly what happened here? This is a regulatory issue. It requires oversight. This is different. This is not a dispute between two civil parties. I am regulated. I understand your argument. Let me ask you one other thing. You suggest that the $1,200 or the $1,000 is a fine. The FINRA said, well, the SEC says it wasn't a fine at all. It was a late fee. Well, I can't argue one way or the other. I'm not sure. Late fee? Was it because you filed something late? Was the $1,000 assessed against you because you filed something late? No. My understanding was it was filed against me because I didn't obey the regulation or the requirement to have it filed at that time. Well, the reason I ask that is pretty important because you also were assessed costs. Right. And the costs are simply costs that are assessed in every action. Correct. They're not sanctions. What you're doing is you're trying to suggest which, if I look at Appendix B3 of what the SEC put in its or what is in the record, it doesn't look like this is a fine at all. It looks like it's an assessment of a cost for a late fee. You can't be that isn't a sanction. Okay. It's not a sanction, but they still have an obligation to review. There's nothing in the record, is there, that shows what the basis was for a $1,000 late fee other than as a sanction for being late? Is there? Well, my view of it is that the sanction was the period of suspension and the possibility of expulsion. That's why I didn't apply for a stay. There was no time limit in their rules of practice that gave me the security of knowing within a certain time they would rule on a stay. They don't have to grant a stay. Well, and what you were saying, their position was if you had requested a stay, then you would have a live controversy, right? Right. And I'm disputing that live controversy has to be part of it. And if it does, I have a continuing injury from the fact, and it was in place at the time, that FINRA wrongfully extended my suspension, and I was subject to expulsion. There was a six-month time period during which, if I had remained suspended, I would be expelled. Basically, we've used all of your 15 minutes, but I'll give you three minutes for rebuttal after. Okay. Thank you. Good morning. Good morning, Your Honors. Nicholas Brani on behalf of the Respondent Securities and Exchange Commission. All right. I think maybe we can just jump right in since I think the Court's all well aware of the factual predicate here. You know, there's a troubling aspect to all of this in terms of that you're asking for Chevron deference, and I'm not sure that you're not entitled to it. But then if there – but I'm not sure that the way that you've determined a live controversy is reasonable. All right? That maybe – you know, I'm not – I think that a live controversy, I see why that might be – that you would want to limit that to. But it's hard to not look at this case and wonder why the SEC is making a federal case out of this with all of this. And obviously, there's something more at stake. And I'm just – you know, the appellant isn't a person that's been a totally irresponsible person. I mean, when this requirement came up, he contacted someone and, you know, he's tried to comply. And then it seems that then it's like, well, if you requested a stay, then you would have a live controversy. But on the other hand, if he requested a stay, he wouldn't know when you would act. And you really didn't act within the time frame. You know, at every turn, it smacked sort of a bureaucracy. If you'd only done this, then you could have had that. And now – and then if you'd only maintained that he was still contesting the $1,000, then maybe you'd have a live controversy in front of this Court. And – but then you've got waiver. And, you know, what's going on here? In a lot of ways, Your Honor, you're right. This is an unusual case. This is a case where things have happened that, in future experiences, sort of are unlikely to happen. But the commission doesn't deal sort of strictly with the facts. Well, yeah, you want the law. But you obviously have some discretion. You could have mediated. You could have done a number of things to maybe straighten this out. But now it's – what you're asking for, if you – sort of strikes at the heart of judges, you know, I want to think if there is some mechanism to have a live controversy, it just seems that every corner with this guy, you told him he didn't, he did, you know, he's damned if he did, damned if he didn't, you know, and it seems that you could have handled this differently. That's probably true. There could have been another way to handle this. But one thing that I would point to, Your Honor, is if ultimately, as I understand what Chairmaster was saying this morning, ultimately what he wants is review, not so much of the sanction that was imposed in this case, but he wants review of the – what the commission generally refers to as a single issue or interpretation. Well, he doesn't want to be told at every turn that he doesn't have a live controversy. And then he doesn't want to be told, well, if you'd only requested his stay, then you would have had a live controversy. But for him to request a stay, this guy doesn't make very much money. You know, it's a really small business. It's not that he's trying to be a scofflaw. And then he did ultimately, as I think as Judge Smith said, okay, so he ultimately decided I'll pay the penalty, I'll pay all of this, because I need to be in business. And then you didn't lift the stay right away anyway. So I'm just wondering when, you know, maybe you're entitled to deference at, you know, Step 1, but then I look at 19E, and it looks like 19E1 makes clear that the commission must set aside such a sanction if it was incorrectly imposed. And 19E2 says that the commission has authority to cancel, reduce, or require the remission of such a sanction, even if the fine was correctly labeled and paid off. But everywhere he went, everyone said I can't do anything, I can't do anything. And here we are sitting in the Ninth Circuit over, you know, and I just wonder if the result would have been any different if it would have been Microsoft and they would have had all their attorneys down on top of you, but you got a pro se. That's probably true, because Microsoft, Your Honor, probably would have sought a stay. Ultimately, in some senses, that's what this comes down to. There was a procedural mechanism for him to get review. Let me ask a different kind of question, because the definition of what is a live controversy, is that part of a regulation, or has that simply been decided by the committee, by FINRA, on a case-by-case basis? So what the statutory system itself says, 19D and 19E, say any final disciplinary sanction. I know that. I'm talking about, though, there is this term that you've adopted as to what constitutes a, quote, live controversy, yes? Yes. How was that, how did that come into being? So there, if we step back sort of to look at the overall statutory scheme that Congress created this system. No, no, no. I'm asking, is this a function of a regulation, or is it a function of adjudication? It's a function of adjudication interpreting the statutory scheme as created by Congress. And was that adjudication, it was sort of developed on a case-by-case basis? I think that's right within the statutory framework. And was it ever the subject of any appellate ruling by the SEC? In terms, you mean the deference? Well, I'm not sure there's Chevron deference. This is why I'm asking these questions. It's clear that if the statute is silent and the SEC issues a regulation, then it's entitled to Chevron deference unless it's totally unreasonable, et cetera. There's some case authority for saying, although it's not totally clear in my view, for saying that if there's a determination made on an adjudicatory basis by an administrative law judge and it goes up to the SEC and they issue a written decision acting as the commission in their appellate capacity, that that may be entitled to Chevron deference. I'm not totally sure this is either of those. And so I'm not totally sure why there's Chevron deference. The commission interprets the Exchange Act provisions that would be involved here. I think what you're asking is the system as the commission designed it here, is that entitled to deference? The commission took the overall statutory scheme here, 19D and 19E, that don't clearly spell out whether there has to be, instead of saying a live sanction, that's one way to say it. I think that's sort of a descriptive term. Is there a sanction in place that the commission can act against? That's in 19E. 19E says the commission shall, in reviewing any final disciplinary sanction, shall do a very specific set of things. That is to affirm, modify, remand, or set aside the sanction. Now, the backdrop to that system is that when Congress adopted 19D and 19E, the whole framework that we have today, it allowed a private preexisting SRO regulatory system to largely remain in place. And provided for commission review pursuant to this very specific framework. And what the commission is saying, Your Honor, is where there is no sanction in place that it can affirm, modify, remand, or set aside. There simply is, there's no mechanism for the commission to exercise jurisdiction. And a number of courts have held the commission is limited to doing those things in reviewing a final disciplinary sanction that is in 19E. So, for instance, the commission lacks the authority to increase a FINRA imposed sanction. All right. So, on that interpretation, the, why was, why, assuming he hasn't waived the $1,000 point, why isn't that a sanction? Whether you call it a late fee or whatever, why isn't it a sanction? Well, so it's, it's not, as the commission determined, it's not a fine. It's a fee. And the commission. So, you know, that's, Alice in Wonderland is good about calling things by various names. But why, why isn't it, in fact, a sanction? The commission has determined that it's a fine under FINRA systems. It was treated as a fine part of the. Wait, wait, wait. What was the basis for the $1,000? It wasn't that FINRA had suffered $1,000 of extra expenses. I think you're right, Your Honor. It's a sanction. It's like you're late, we penalize you for being late. I mean, you can answer the question if you want. I guess I'm trying to figure out what the commission said. The commission said late fee. Is that a sanction or isn't it? That's his question in my book. Maybe he wants to ask it a little bit differently because he wants to lead a little bit. But that's what I want your answer to. The commission determined that it wasn't a fine. It was a late fee. That's what it was described as. Part of the problem here is the sharemaster attached a document to filing what he did in front of the commission. And you look at the commission's opinion. But if they determine it to be a late fee and they just call it that, does that then always evade review? The commission has said it lacks the jurisdiction to review those types of fees. Again, it's stepping back and looking at the overall scheme here. Congress opted to leave a largely private preexisting SRO system in place and only gave the commission the ability to do certain things. And the commission has long said it lacks the ability to order the return of sunk administrative fee type things. Again, part of the problem here, sharemaster didn't argue it in his brief. He didn't clearly explain what it was when he filed it with the commission. Well, I guess that is part of the problem. But part of the problem is the way that they handle it, too. And someone then, it's just, I mean, anyone that's dealt with it everywhere you go, well, no, you can't do that, you can't do that. And so isn't there, if you're going to say something has to be live, if we say things are moot, generally along with that, there are exceptions to mootness that allow to say this would otherwise evade review. Right. And it's, you know, if you want total deference, but then you want to totally evade review, it makes it, you know, I mean, we don't want to hear it. We don't want to, you know, we don't want to hear these cases. But if people, if something completely evades review and at every turn there really is no option for someone, then it makes it hard to say that their determination is reasonable. I think, again, if I understood Chairmaster correctly this morning, Your Honor, what he wants is review of the interpretation of the PCOB registered accountant provision. There are other mechanisms to get that other than through sort of this rubric. He could have sought an interpretive release from the commission. He could have, I guess, theoretically filed an APA declaratory action. He could have sought a stay in this case. But for how does, but if a stay, is a stay illusory for someone like this that doesn't, you know, doesn't have money? You know, if they're not in business, they're not making any money. They're not, you know, and so it's, you know, you could have bought a Mercedes, but if you don't have any money to buy a Mercedes, then, you know, it's so. Just step back. The way the court analyzed, well, there are two points there. Well, I mean, you want this rule, I think, because you're looking big. But he's the guy that's sitting here who's small. So if agencies want deference and we don't really want to hear these, we need to sort of, on some level, there needs to be, it can't be arbitrary and capricious. It needs to be reasonable. And if you set up a system that looks like for this guy, that at every turn it evades review, it doesn't, it really doesn't. But I understand why the mechanism, why we don't really want to be hearing all these cases, too. And I understand that. Your Honor, again, this is an unusual case. I can't, in my own experience, I can't think of a case that has taken so many twists and turns to it. So you don't want bad law. Why don't you mediate this and solve the problem? I don't know that the commission has the authority to do that. Well, we can mediate, you know. I mean, you're telling me that they don't have the authority for something like this. That doesn't help your case. To step back, though, Your Honor, it's the system that Congress created. Congress gave the commission, again, leaving SROs largely independent, gave the commission specific powers and things that it could do. The commission can't go beyond the powers in reviewing a final disciplinary sanction. Now, the commission can do other things. Again, if he wants an interpretation of what he really cares about, he can ask for an interpretive release. He could file an APA action. There are other things that he could have done. He opted not to do those things. Can I ask a different question? What you're describing as a late fee, the panel didn't describe it as that, did they? The FINRA panel. You're talking about the FINRA panel, Your Honor? Pardon? You're talking about the FINRA panel? Yes. So I think there, again, because Chairmaster didn't specifically raise this and did not argue it in any detail before the commission even, I'm at a little bit of a loss here. I know that the hearing panel imposed administrative fees, and I believe it was a transcript fee. Your question is the extra $1,000 fee. Yes. Again, Chairmaster didn't argue it. I understand, and there's always this tension between the fact that if he were not pro se, we would be holding him quite strictly to the kinds of waiver rules that you're referring to, and it is a little unfair, of course, when you have a pro se litigant. They often don't raise things, and the courts indulge them that, and it puts you a little bit at a difficulty. But nevertheless, I don't see in the record, from what I've looked at, any place where FINRA described it as a late fee. Do you have anything to the contrary? Again, I'm not sure which fee. The $1,000. The $1,000 had been raised. In their order, the FINRA panel said, Shoemaster is also ordered a cost of $1,785, which includes an administrative fee of $750 and the cost of the hearing transcript. And it seems to be conceded that the cost of the hearing transcript was not $1,035, but rather was $35.  So it's not there described as there. It's described as cost, which it clearly isn't. It's something else. And I'm wondering where you're getting the notion that it's a late fee. If I may, my time is up. Yes. The only indication in the record is what Shoemaster filed, what he attached. The document that he actually attached, I believe, described it as a late fee and not as a fine. And it's not a final disciplinary sanction for purposes of review. Because it's a fee, it's not a fine. But what he calls it doesn't he can't. That's what he argued in front of the commission, Your Honor. All right. If he had mentioned it in his brief here, would we have a live controversy? If he had mentioned that it was a fee. If he had, in his opening brief, if he had said he was contesting the $1,000 late penalty as a fine, would we have a live controversy here? I would be discussing whether or not the commission's finding on that point, that it was a fee and not a fine, was supported by substantial evidence. But again, because he didn't make that argument, I don't think he'd be able to make it. All right. But let's say, but I want you to answer this hypothetically. If he had raised that in his brief, is it a live controversy? I think that the commission's determination that it's a fee is supported by the record, given what's in the record, and therefore it's hypothetical. But you said in the record you can't tell what it was. The commission's determination was that the only thing in the record, the only document labeled it a fee and not a fine. The fees are never live controversies that someone can challenge. For purposes of Section 19D. So if a fee was like $100,000, we impose a late fee of $100,000, and you say that's not challengeable. I think that would be a very different case, Your Honor. Why? But I understand there are other things. I think what you're concerned with is FINRA imposing these types of things in the future and sort of a runaway. Well, we're concerned with the principles of the whole. Yeah, I mean, we're concerned with the law, you know, and that's why when you have bad facts, that's not necessarily the best time to determine the law. But, you know, we have to follow the law. But when you want Chevron deference and, you know, you want all of these things, it could just as easily be $100,000. And that really wouldn't be different than his under the law. But you're saying it would be. Like, we pay close attention if it's $100,000, but $1,000, no. Again, what the commission would do with that, the commission, I can't speak to what the commission would do. But a life controversy needs to have, it would need to have standards, and it should be the same whether it's $1,000 or $100,000 or $1,000,000. There are other mechanisms. This is an important point, Your Honor. There are other mechanisms that the commission may police FINRA. There are other things the commission can do. So if you're concerned about situations where you run into these run-of-the-mill, you know, unusual situations, the commission has other oversight authority that it can use. And in particular, it actually did that in the case. But it doesn't seem to me it should matter whether it's $1,000 or $100,000. Really. I mean, if we're dealing with legal principles. Well, frankly, frankly, I'm wondering why your answer isn't it depends on whether it's a cost or a sanction. It seems to me that's the answer to this, to these continual leading questions. It's either a cost or it's a sanction. And in this case, the commission determined, based on everything here, it was a late fee. It was a cost. The same cost established in all kinds of civil cases. And I guess I'm having a tough time understanding why we're continuing on into extra time just to debate this question. So I answer. Yeah, Your Honor, but it's much better than I did. That's essentially this. That's fee and cost. Well, I kind of needed to hear his answer, though. So I'm sorry that I took you into overtime. If my colleague didn't want me to. Well, it isn't a matter of not wanting you to. I think the obvious answer here, it's either a sanction or a cost. If it were a sanction, we'd have it under 19E. If it's a cost, it's not there. We either owe due deference or we don't. That's my answer. All right. Thank you, Your Honor. Your time is in overtime. But we took you there. That's not your fault. All right. I'm giving you three minutes for rebuttal. Thank you, Your Honor. I appreciate your bringing up the issue of life sanction because I did have some exceptions to mootness, which I raised in my brief, which the SEC did not consider. And the way I look at it, I had the law when I started. And then when I finished, I didn't. I had an interpretation of the law. And I had an interpretation of the law that lacked fairness. And the fairness it lacked is one which you raised, and that is it was incomplete. If I were arguing a dispute in a court. I understand, too. We're not a court of fairness. We're a court of law, too. I understand. But from my point of view, the law gives me some hope of having fairness. That's what I see in it. And I'm not a lawyer, and I can't debate the fine points. But what I do see is that I can read a statute, and I can see that the statute says I have a right to review if two things happen. And those two things happen. And then an interpretation comes along, which deprives me of that. And it happens after I've relied on the law. It becomes retroactive. So I'm at a distinct disadvantage. I'm up against a very powerful administrative agency. And I'm powerless against it unless I can rely on the law. And when they can have the ability to change the law after I've relied on it, that's where I think fairness suffers. And when people rely on the law, and it's plain language, and then to have somebody come along afterwards and rip it out, it makes you despair about the possibilities of fairness in conducting your life and conducting your business. And that's why I'm here, because they can do what they want. And they are owed deference in a lot of situations. But I don't think they're owed deference when it takes away my right for appeal. That's a very important right to an individual. And they're stripping it away. You may have arguments why they can do it.  I have to submit. And I've submitted all the way along only to get here today to argue that I have the right to be heard at all, let alone the original case that I started with for filing an annual statement that need not be audited. And so I ask you for relief. I ask you to ask them to obey the meaning of the law and the statute and give me the chance for judicial review of what I originally raised for their review. All right. Thank you both for your argument. This matter will stand submitted.
judges: Callahan, N.R. Smith, Rakoff